WILLIAM PAUL NOLAN (WN-8292)
Attorney for Plaintiffs
THE NOLAN LAW FIRM
444 East 75 Street
New York, New York 10021
(917) 570-0297

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------X
                                   :
RANDY LANGHAMER, DEBRA LANGHAMER   :
and TERRI WELLER,                  :         ECF CASE
                                   :
                  Plaintiffs,      :         2022 CIV.
                                   :
       -against-                   :         COMPLAINT
                                   :
RALPH C. JOHNSON; AMERICAN GROWTH  :
FUNDING II, LLC; PROPELLUS         :
FINANCIAL SERVICES, INC. and       :
PROPELLUS, INC.                    :
                                   :
                  Defendants.      :
                                   :
----------------------------------X
```

## COMPLAINT

Plaintiffs, Randy Langhamer ("RL"), Debra Langhamer ("DL") and Terri Weller ("TW") for their Complaint against Defendants, Ralph C. Johnson ("Johnson"); American Growth Funding II, LLC ("AGFII"); Propellus Financial Services, Inc. ("Propellus Wyoming") and Propellus, Inc. ("Propellus Oklahoma"), allege as follows for their Complaint.

## PLAINTIFFS

1.    Plaintiffs, Randy and Debra Langhamer, are residents of 53 Sage Hollow Court, Dix Hills, New York 11746.

2.    Plaintiff, Terri Weller, is a resident of 232 Old Mill

Pond Road, Edgewater, Florida 32141.

**DEFENDANTS**

3.    Johnson is a resident of 18 Country Club Lane, Colts Neck, New Jersey 07722.

4.    Johnson is the majority owner, chief operating officer and chairman of the board of managers for Defendants, AGFII, Propellus Wyoming and Propellus Oklahoma.

5.    Defendants solicit investors, such as Plaintiffs, to finance small businesses and use the small businesses' loan repayments to repay Defendants' investors.

6.    The Defendant entities were not registered under the United States Securities Act of 1933 or under the laws of any state and the issuance of the units was undertaken pursuant to Rule 506, Regulation D, of the 1933 Securities Act private placement exemption from registration and state law exemptions.

**AGFII**

7.    AGFII, was a limited liability company incorporated in Nevada in 2010, which had offices at 14 Wall Street, New York, New York 10005.  As of June 1, 2021, AGFII was in default of its Nevada limited liability corporation obligations, its charter revoked and its right to transact business revoked.

**Propellus Financial Services, Inc**.

8.    Propellus Financial Services, Inc., f.k.a., Propellus, Inc. ("Propellus Wyoming"), is a Wyoming corporation with its

principal place of business at 30 Wall Street, New York, New York 10005.

**Propellus, Inc**.

9.    Propellus Inc. ("Propellus Oklahoma") is an Oklahoma corporation with its principal place of business at 30 Wall Street, New York, New York 10005.

## SUMMARY OF ALLEGATIONS

10.    Plaintiffs are owed more than $3,000,000 from their investments in AGFII, which, as demonstrated *infra*, appears to have been a Ponzi scheme.

11.    Plaintiffs received AGFII redemption schedules from Defendants, which schedules provided the dates when AGFII would pay Plaintiffs' AGFII's redemptions on Plaintiffs' investments.

12.    From the get go, Defendants failed to honor Plaintiffs' AGFII scheduled investment redemptions.

13.    Despite Plaintiffs' dozens of email requesting Defendants to honor Plaintiffs' AGFII's redemption due dates; not to roll over Plaintiffs' AGFII redemption due dates and not to reinvest Plaintiffs' funds in AGFII, Defendants failed to pay Plaintiffs' redemptions, rolled over Plaintiffs' funds into AGFII and failed to provide monthly statements of Plaintiffs' investments.

## THE SEC'S 2016 ACTION

14.    The Securities and Exchange Commission ("SEC") brought

3

an action in this Court before Judge Kimba Wood, 16-cv-00828, against Defendants, Johnson and AGFII, as well as, Portfolio Advisors Alliance, Inc.; Howard J. Allen III and Kerri I Wasserman.

15. The SEC's complaint alleged, among other things, that between March 2011 and December 2013, Johnson and AGFII falsely claimed that AGFII's financial statements were being audited yearly.

16. Also, the SEC's Complaint alleged that AGFII made misrepresentations in its offering documents about its management and concealed details about deteriorating loan values that could imperil full payment of Defendants' promised returns to AGFII's investors.

### DEFENDANTS' BOGUS 2017-18 WALL STREET PIZZA LLC $294,500 LOAN

17. To quiet Plaintiff, RL's, complaints about AGFII's failure to pay overdue redemptions, in 2017-18, Johnson made what Johnson claimed to be $294,500 in "loans" not to RL but to RL's limited liability company, Wall Street Pizza, LLC {"WSP"}, which never invested in AGFII, through another fund owned by Johnson as CEO and President, Global Factors, LLC {"GF"}, a Wyoming limited liability company with its principal place of business at 14 Wall Street, New York, New York 10005.

18. In explaining the transaction, Johnson told RL that the interest on the WSP loan would be offset by the

interest, RL was receiving from AGFII.

19.   Upon information and belief, Johnson falsified and inflated GF's receivables to make the loan appear to be a GF performing business loan when the transaction actually was robbing Peter, GF, to pay Paul, RL.

20.   RL treated the GF check to WSP as an AGFII redemption and deposited the GF check.

## AGFII's 2018 U.S. INCOME TAXES

21.   Johnson provided AGFII's 2018 and 2019 US Income Tax filings to Plaintiffs, however, Johnson blacked out the name of the AGFII's CPA tax preparer.

22.   When Plaintiffs inquired of Johnson why the U.S. income tax preparer's name was blacked out, Johnson responded to Plaintiffs that since Johnson knew the facts, there was no need to speak with the CPA, who prepared the U.S. income tax reports.

## UNITED STATES DISTRICT JUDGE KIMBA WOOD'S JANUARY 24, 2019 ORDER

23.   On January 24, 2019, the Honorable Kimba M. Wood entered judgments against Johnson and AGFII, who were charged by the SEC with lying to investors, such as Plaintiffs, who had purchased AGFII's high yield securities.

24.   Without admitting or denying the allegations in the SEC's complaint, Johnson and AGFII consented to the entry of judgments permanently enjoining them from violating the antifraud provisions of Section 17(a) of the Securities Act of 1933 and

Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934.

25.  In addition, the judgment required Johnson to pay a $75,000.00 penalty, disgorgement of Johnson's ill gotten gains and prejudgment interest.

26.  After the news of the federal court judgment was received by the investing public, AGFII's investors disappeared.

27.  As demonstrated *infra*, Defendants continued to abuse the securities laws and AGFII's investors including Plaintiffs.

## BIG JIM'S DISCOUNT MATTRESS CENTER

28.  Upon information and belief, in 2020, Johnson diverted funds from AGFII to invest in Big Jim's Discount Mattress Center, 301 New Jersey 35, Lawrence Harbor, New Jersey 08879, which no longer is in business.

## JOHNSON'S INVESTMENT IN PERUVIAN GOLD

29.  Upon information and belief, Johnson diverted $6,000,000 in AGFII funds to invest in Royal Sovereign Costino LLC ("RSC"), a buyer and seller of precious metals, and installed Anthony Cappazze, RSC's founder and CEO, on AGFII's Board of Managers as Chief Underwriting Officer.

30.  Johnson told Plaintiff, RL, that Cappazze had borrowed $6,000,000 from AGFII for RSC and failed to repay AGFII.

31.  In 2019, Cappazze denied Johnson's story to RL and told RL and another AGFII investor, that Cappazze never was under an

6

obligation to repay AGFII because there was no loan from AGFII to Cappezze or to RSC but that Johnson invested $6,000,000 in RSC.

32.  Johnson's investment of AGFII's funds in RSC was a diversion of AGFII's funds and a breach of AGFII's Private Placement Memorandum ("PPM") representation that AGFII did not make loans greater than $200,000 secured and collateralized.

## COVID

33.  With the exception of the WSP "loan-redemption", Defendants had not paid AGFII redemptions for 18 months prior to Covid but with the arrival of Covid, Defendants used Covid as the alleged reason to stop paying investor redemptions.

34.  In March 2020, Defendants suspended all redemptions including past and present interest payments with plans to liquidate AGFII and GF.

35.  AGFII's investors were to receive 15 cents on the dollar while rolling AGFII's and GF's investments into a third fund, which would become Propellus Wyoming.

36.  Subsequently, RL emailed Johnson looking to get paid from AGFII and questioning Johnson's plan to form another fund.

## NOTICE OF EXCHANGE OFFER

37.  In January 2021, Defendants emailed a Notice of Exchange Offer ("NOE") to the holders of preferred units of AGFII including Plaintiffs, which stated:

> This Notice of Liquidation and the accompanying Exchange Offer are being distributed to the Preferred Members of

record (the "members") of all series of Preferred Units.
The purpose of this notice is to inform you that Management
has determined that given the recent and continuing effects
of the Covid-19 pandemic, it is in the Members' best
interest to unwind and liquidate AGFII pursuant to the
provisions of the Operating Agreement.  Further, Ralph
Johnson has formed Propellus Inc. ("Propellus"), An
Essential Business Alternative Financing Fund, and is
offering its Members the opportunity to exchange their AGFII
Preferred Units for a newly created Series of Preferred
Stock in Propellus ("The Exchange Offer").  YOU ARE BEING
ASKED TO DECIDE WHETHER OR NOT YOU WOULD LIKE TO PARTICIPATE
IN THIS EXCHANGE OFFER IN WHICH YOU WILL BE ASKED WHETHER
YOU CHOOSE TO EXCHANGE YOUR AGFII PREFERRED UNITS FOR NEWLY
CREATED PROPELLUS SERIES B CONVERTIBLE, REDEEMABLE PREFERRED
SHARES.  IT IS STRICTLY YOUR DECISION TO PARTICIPATE IN THE
EXCHANGE OFFER AND YOU SHOULD CONSULT WITH YOUR FINANCIAL
ADVISOR BEFORE MAKING SUCH A DECISION.

38.  Given that the NOE explained that AGFII would be

liquidated based on AGFII's existing net assets as of November

30, 2020 and that only the proceeds collected from those assets

over the next 13 months would be distributed on a pro-rata basis

with no claim on future assets or collections and because

Johnson and AGFII had not paid Plaintiffs' AGFII's scheduled

redemptions; ignored Plaintiffs' many demands not to roll over

Plaintiffs' AGFII investments and the NOE provided that Propellus

would be the Trustee for AGFII's liquidation, Plaintiffs had no

choice but to sign the NOE to have any chance of obtaining a

return on their AGFII investments.

39.  In January 2021, Plaintiffs electronically signed the

NOE, which was predated to November 23, 2020 but Plaintiffs never

received an electronic copy of their NOE signed by an officer of

Propellus, Johnson, as previously promised to Plaintiffs by

Johnson.

40.   Johnson corroborated Defendants' obligation in his email, which stated "After you sign AGFII Exchange Offer R&D all parties will receive a final PDF copy by email".

41.   Over the next several months, Plaintiffs continued to question Johnson about when Plaintiffs could expect a return on their investments.

42.   On July 21, 2021, Plaintiff, RL, emailed Johnson:

> Ralph, I'm so glad to hear things are going better than expected.  It is great news about the 10 million client raise and the additional 6 million private client investors. As we discussed when I signed the exchange agreement if you get . . . {the} money can you buy me out and make me whole. I told you I can't wait 12 months.  You said to me on the phone if you can get 6 million you will buy me out. I need the money badly.  Please see what you can do I'm sure it will be very successful the funds however I need the money see what you can do from your private investor raise thanks Randy

43.   That day, Johnson emailed RL "Absolutely. You have my word I am making that a priority.  Thanks".

44.   Later that day, Johnson rengeged:

> Randy we can only do what we can do now.  Covid effect is real. It's jot [sic] make believe. I just need to know if you want to exchange to get the free shares and warrants. Nearly everyone has exchanged because it's smart.  The world is what it is but we put this plan in place for maximum recovery.  My advice is to exchange.  Get the shares. That's the best plan with the most recovery and liquidity options.  RJ

**AUGUST 26, 2021, THE LATEST JOHNSON REORGANIZATION**

45.   On or about August 26, 2021, Propellus Oklahoma, an alternative finance company, specializing in assisting small

9

businesses with their cash flow needs, announced that it had completed a reorganization with Sunvalley Solar Inc.

46.  Under the terms of the reorganization, Propellus Oklahoma became the parent company with Sunvalley Solar, Inc. becoming a subsidiary and changing its name to Sunvalley Solar Tech, Inc.

47.  Under a share exchange agreement, Propellus Wyoming became Propellus Oklahoma's operating entity, a wholly owned subsidiary of Propellus Oklahoma.  Also, Sunvalley Solar Tech, Inc. was removed from Propellus Oklahoma's operations.

48.  Johnson assumed the roles of Propellus Oklahoma's CEO and Director.

## SUBSEQUENT EVENTS

49.  On October 26, 2021, Plaintiff, RL's, McIntosh Tax and Asset Management Group, 1375 Deer Park Avenue, North Babylon, New York 11703, wrote to the U.S. Internal Revenue Service:

> This is to formally advise the Internal Revenue Service that investments and interest earned and reflected in the American Growth Funding II K1s are false, and the taxes assessed were based on fraudulent K1 statements provided by Ralph C. Johnson and American Growth Funding II.
>
> The K1s provided to the client [RL], and included on his 2015-2020 returns, were based on paper entries only, and do not accurately reflect the interest earned by the client. The American Growth Funding II has been identified as a Ponzi scheme via investigations conducted by the SEC, FBI, and Department of Justice.
>
> Upon trying to redeem his principal investment, the client [RL] learned of the fraudulent nature of the fund, and has yet to receive any of his principal or previously stated

interest reflected on the fraudulent K1s.

Attached is Litigation Release No. 24382 DTD January 25, 2019 where the SEC Obtains Judgments Against American Growth Funding II, LLC and Ralph C. Johnson.

In my 27 years as an accountant, I have never seen an investment whose performance is inconsistent for each investor.  My client invested into the American Growth Funding II for himself, his wife, and his children.  One would expect the K1s to look similar, given that they were all put into the same investment; however the performances and structure of each K1 varies significantly each year.  In my experience, that is virtually impossible, and futher illustrates the fraudulent nature of the investment.

Please review the amended returns which reflect the client's actual income and adjust your records accordingly.

50.  On June 1, 2022, Plaintiff, RL, emailed Johnson:

Ralph, I don't feel comfortable about exchanging or you're liquidating.  I don't want 80% haircut I don't want less equity in the exchange than what I invested.  What I want is for it to sit until I get all my money back.  I don't want a discount I don't need your extra shares.  I am very upset and dismayed about this whole situation.  How you could take an 80% discount on the exchange and only give 12 months?  And then only giving 12 months and then bought the assets by the new company at present value?  Why don't you just give three years and let us get our money back this is complete nonsense don't touch anything let everything sit.  I don't feel comfortable with this new conversion or a new company.  I invested in AGFII you dropped the ball and don't blame Covid.  My retention is what we had before Covid.  I didn't invest to lose in this company that was not how it was explained.  You can tell everyone it's Covid but my redemptions were 18 months before that.

51.  Johnson's email replied:

So you are confirming you do not want any of the accounts exchanged, correct?  I need to send the list over to the attorney to issue the shares so I just need to know for sure.  RJ

52.  The list of those accepting the NOE should have been

sent to Defendants' attorney over a year ago.

53.  On June 21, 2022, Plaintiff, TW's, certified public
accountant, Wayne Schwaeber, wrote to TW:

> I am writing this letter to reiterate my concerns regarding
> the American Growth Funding II LLC K1's.
>
> When we prepared your 2019 tax returns in April 2020 you
> provided a K1 from American Growth Funding II LLC.  This was
> the first time you provided a K1 for this investment and I
> questioned what the investment was.  At that time, I also
> expressed my opinion that the K1, on its face, did not look
> right to me.  This was my gut feeling after being in
> practice for over 30 years.  Upon hearing your explanation
> on what the investment was, I also expressed my opinion that
> this did not sound like an appropriate investment for you
> and that, again, based on my years of experience something
> seemed fishy about it.  I urged you to terminate your
> interest in the investment if you could.
>
> Feel free to contact me with any questions or if I can
> provide any further information.

## VIOLATIONS

### NATURE OF THE PROCEEDINGS AND THE RELIEF SOUGHT

54.  Plaintiffs bring this action pursuant to 28 U.S.C.
§1331, 28 U.S.C. §1332, 15 U.S.C. §78j(b) and §§77q(a)(1), (2)
and (3).

### JURISDICTION AND VENUE

55.  The Court has jurisdiction of this action pursuant to
28 U.S.C. §1331 and 28 U.S.C. §1332(a).

56.  Venue is proper in this district pursuant to 28 U.S.C.
§1391(b)(1) and (2) because a substantial part of the events or
omissions giving rise to the claim occurred in the Southern
District of New York.

57.  During the time of the conduct at issue, Defendants maintained their principal places of business in New York, New York.

58.  In connection with the conduct alleged in this Complaint, Defendants directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails or of the facilities of a national securities exchange.

### FIRST CLAIM FOR RELIEF

Violations of 15 U.S.C. §78j(b)
and Rule 10b-5(a), (b) and (c)

59.  Plaintiffs repeat and incorporate by reference each and every allegation contained in the above paragraphs.

60.  By reason of the foregoing, Defendants directly or indirectly, singularly or in concert, by use of the means or instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly, have:  (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material fact, or omitted to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading and or (c) engaged in acts, practices and courses of business, which operated or would have operated as a fraud or deceit upon purchasers of securities and upon other persons.

61.  By reason of the foregoing, Defendants, singly or

13

in concert, directly or indirectly, have violated and unless
enjoined will again violate, 15 U.S.C. §78j(b) and Rule 10b-5(a),
(b) and (c).

62.   WHEREFORE, Plaintiffs demand judgment against
Defendants in an amount to be determined at trial but believed to
be in excess of $3,000,000 plus AGFII's promised 12% interest and
New York's 9% statutory interest from January 2021 and the costs
of this action.

## SECOND CLAIM FOR RELIEF

Violations of 15 U.S.C. §§77q(a)(1),(2) and (3)

63.   Plaintiffs repeat and incorporate by reference each
and every allegation contained in the above paragraphs.

64.   By reason of the foregoing, Defendants directly or
indirectly, singularly or in concert, by use of the means or
instrumentalities of interstate commerce or of the mails, or of
the facilities of a national securities exchange, in connection
with the purchase or sale of securities, knowingly or recklessly,
have: (a) employed devices, schemes and artifices to defraud; (b)
made untrue statements of material fact, or omitted to state
material facts necessary in order to make statements made, in the
light of the circumstances under which they were made, not
misleading and or (c) engaged in acts, practices and courses of
business, which operated or would have operated as a fraud or
deceit upon purchasers of securities and upon other persons.

14

65.  By reason of the foregoing, Defendants, singly or in concert, directly or indirectly have violated and unless enjoined will again violate §§77q(a)(1), (2) and (3).

66.  WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be determined at trial but believed to be in excess of $3,000,000 plus AGFII's promised 12% interest and New York's 9% statutory interest from January 2021 and the costs of this action.

### THIRD CLAIM FOR RELIEF

> Control Person Liability for AGFII's
> Violations of 15 U.S.C. §78j(b)]
> and Rule 10b-5(a), (b) and (c) and
> 15 U.S.C. §§77q(a)(1), (2) and (3)
>                 (Johnson)

67.  Plaintiffs repeat and incorporate by reference each and every allegation contained in the above paragraphs.

68.  At all relevant times, Johnson, directly or indirectly controlled AGFII and GF for the purposes of Section 20(a) of the Exchange Act 15 U.S.C. §78t(a).

69.  By engaging in the conduct alleged above, Johnson is liable as a control person for AGFII's violations of 15 U.S.C. §78j(b) and Rule 10b-5(a), (b) and (c) and 15 U.S.C. §§77q(a)(1), (2) and (3).

70.  WHEREFORE, Plaintiffs demand judgment against Johnson in an amount to be determined at trial but believed to be in excess of $3,000,000 plus AGFII's promised 12% interest and New

15

York's 9% statutory interest from January 2021 and the costs of this action.

## FOURTH CLAIM FOR RELIEF

Aiding and Abetting Liability for
AGFII's Violations of 15 U.S.C. §78j(b)]
and Rule 10(b)-5(a)(b) and (c)
and 15 U.S.C. §§77q(a)(1), (2) and (3)
(Johnson)

71.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the above paragraphs.

72.   As alleged above, AGFII violated 15 U.S.C. §78(b) and Rule 10b-5(a), (b) and (c) and 15 U.S.C. §§77q(a)(1), (2) and (3).

73.   Johnson knew or recklessly disregarded that AGFII's conduct was improper and knowingly rendered to AGFII substantial assistance in this conduct.

74.   Johnson aided and abetted and unless enjoined will continue to aid and abet AGFII's violation of 15 U.S.C. §78j(b) and Rule 10(b)-5(a), (b) and (c) and 15 U.S.C. §§77q(a)(1), (2) and (3).

75.   WHEREFORE, Plaintiffs demand judgment against AGFII in an amount to be determined at trial but believed to be in excess of $3,000,000 plus AGFII's promised 12% interest and New York's 9% statutory interest from January 2021 and the costs of this action.

16

## FIFTH CLAIM FOR RELIEF

Fraud

76.  Plaintiffs repeat and incorporate by reference each and every allegation contained in the above paragraphs.

77.  Beginning in 2011 and continuing to date, Defendants began a Ponzi scheme, falsely claiming that AGFII's financial statements were being audited each year.

78.  Also, Defendants made misrepresentations in their offering documents about its management and concealed details about deteriorating loan values that could imperil full payment of Defendants' promised returns to investors, such as Plaintiffs.

79.  In addition, Defendants failed to pay promised and scheduled redemptions, agreed not to roll over Plaintiff's investments but rolled over Plaintiffs' investments and upon information and belief, diverted AGFII's funds to Big Jim's Mattress Center and to RSC, as well as, paying RL a AGFII redemption by way of an alleged loan to WSP from one of Johnson's companies, GF.

80.  Furthermore, Johnson falsely represented that he exercised control and management of the other Defendants and exercised good faith and integrity in handling the other Defendants' affairs.

81.  Johnson, the Manager, had a fiduciary responsibility for the safekeeping and use of all funds and assets of the

17

Defendants, whether or not in his immediate possession and control, and could not use or permit another to use such funds or assets in any manner except for the exclusive benefit of the Defendants and upon information and belief, commingled Defendants' funds with the funds of other persons or entities.

82.   In 2021 and 2022, Plaintiff's certified public accountants while doing Plaintiffs' income taxes reviewed Plaintiffs' AGFII's K1's; found the K1's to be fraudulent; informed Plaintiffs' of Defendants' fraud and Plaintiffs brought this action.

83.   Defendants' statements were material misstatements made knowingly by Defendants to be false with an intent to deceive.

84.   Johnson and AGFII consented to a judgment but never were convicted of fraud and prior to being exchanged for Propellus, AGFII was performing in that AGFII was paying monthly interest to investors.

85.   As the result of Plaintiffs' reasonable reliance on Defendants' material misstatements made knowingly by Defendants to be false with an intent to deceive, Plaintiffs sustained damages.

86.   WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be determined at trial but believed to be in excess of $3,000,000 plus AGFII's promised 12% interest and

New York's 9% statutory interest from January 2021 and the costs
of this action.

## SIXTH CLAIM FOR RELIEF

Breach of Contract

87.  Plaintiffs repeat and incorporate by reference each
and every allegation contained in the above paragraphs.

88.  The NEO was sent electronically to Plaintiff via Adobe
Sign.

89.  Adobe Sign's template chosen by Defendants required
that after the offeree, *i.e.*, Plaintiffs, electronically signed
and returned the NEO, the offeror, Defendants, had to return the
NOE electronically to the offeree, Plaintiffs, signed by the
offeror, *i.e.*, by an authorized officer of Propellus, Johnson.

90.  Johnson corroborated Defendants' obligation in his
email, which stated "After you sign AGFII Exchange Offer R&D all
parties will receive a final PDF copy by email".

91.  In or about January 2021, Plaintiffs electronically
signed the NOE, which was predated to November 23, 2020.

92.  Plaintiffs never received the promised final PDF copy
of the NOE by email or any other method of transmission of the
NOE signed by an authorized officer of Propellus, Johnson.

93.  Defendants' NOE was a nullity because it was not signed
by a Propellus Officer, Johnson, and returned to Plaintiffs as
promised by Johnson.

19

94.   As the result of Defendants' promised failure to sign and return Defendants' NOE, the NOE was a nullity.

95.   Plaintiffs are in the same position, Plaintiffs were as of January 2021.

96. According to the NOE, RL invested $981,062.83 in AGFII and is entitled to recover $981,062.83 plus AGFII's promised 12% interest and New York's 9% statutory interest from January 2021 and the costs of this action.

97.   According to the NOE, DL invested $126,031.78 in her AGFII IRA account and is entitled to recover $126,031.78 plus AGFII's promised 12% interest and New York's 9% statutory interest from January 2021 and the costs of this action.

98.   According to the NOE, RL invested $196,350.59 in his AGAFII Uniform Gifts to Minors account for his son, Craig Langhamer and is entitled to recover $196,350.59 plus AGFII's promised 12% interest and New York's 9% statutory interest from January 2021 and the costs of this action.

99.   According to the NOE, DL invested $261,669.98 in her AGFII Uniform Gifts to Minors account for her son, Scott Langhamer and is entitled to recover $261,669.98 plus AGFII's promised 12% interest and New York's 9% statutory interest from January 2021 and the costs of this action.

100.   According to the NOE, RL invested $159,640.26 in his AGFII IRA account and is entitled to recover $159,640.26  plus

AGFII's promised 12% interest and New York's 9% statutory
interest from January 2021 and the costs of this action.

101.   According to the NOE, RL invested $197,529.03 in his
AGFII Uniform Gifts to Minors account for his son, Keith
Langhamer and is entitled to recover $197,529.03  plus AGFII's
promised 12% interest and New York's 9% statutory interest from
January 2021 and the costs of this action.

102.   According to the NOE, DL invested $191,719.78 in her
AGFII Uniform Gifts to Minors account for her son, Marc Langhamer
and is entitled to recover $191,719.78  plus AGFII's promised 12%
interest and New York's 9% statutory interest from January 2021
and the costs of this action.

103.   According to the NOE, RL and DL invested $456,136.84
in AGFII and are entitled to recover $456,136.84 plus AGFII's
promised 12% interest and New York's 9% statutory interest from
January 2021 and the costs of this action.

104.   According to the NOE, TW invested $155,706.42 in AGFII
and is entitled to recover $155,706.42 plus AGFII's promised 12%
interest and New York's 9% statutory interest from January 2021
and the costs of this action.

105.   WHEREFORE, Plaintiffs demand judgment against
Defendants in an amount to be determined at trial but believed to
be in excess of $3,000,000 plus AGFII's promised 12% interest and
New York's 9% statutory interest from January 2021 and the costs

of this action.

## SEVENTH CLAIM FOR RELIEF

Breach of Contract

106.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the above paragraphs.

107.   Plaintiffs' contracts with Defendants provided that in return for their investments in Defendants, Plaintiffs would receive redemptions pursuant to redemption schedules provided to Plaintiffs by Defendants.

108.   Defendants breached their contracts with Plaintiffs by failing to pay Plaintiffs the redemptions to which Plaintiffs were entitled pursuant to their agreements with Defendants and promised to by Johnson.

109.   WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be determined at trial but believed to be in excess of $3,000,000 plus AGFII's promised 12% interest and New York's 9% statutory interest from January 2021 and the costs of this action.

## EIGHTH CLAIM FOR RELIEF

Breach of Fiduciary Duty

110.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the above paragraphs.

111.   Page 33 of AGFII's PPM sets forth the Fiduciary Duties of the Manager, Johnson:

The Manager is responsible for the control and management of the Company and must exercise good faith and integrity in handling the Company's affairs. The Manager has a fiduciary responsibility for the safekeeping and use of all funds and assets of the Company, whether or not in its immediate possession and control, and may not use or permit another to use such funds or assets in any manner except for the exclusive benefit of the Company. The funds of the Company will not be commingled with the funds of any other person or entity.

112. As set forth above, Johnson's actions breached his Fiduciary Duty to Plaintiffs.

113. WHEREFORE, Plaintiffs demand judgment against Johnson in an amount to be determined at trial but believed to be in excess of $3,000,000 plus AGFII's promised 12% interest and New York's 9% statutory interest from January 2021 and the costs of this action.

### NINTH CLAIM FOR RELIEF

Bad Faith and Gross Negligence
(Johnson)

114. Plaintiffs repeat and incorporate by reference each and every allegation contained in the above paragraphs.

115. As set forth above, Johnson's actions demonstrate bad faith and gross negligence.

116. Johnson's actions were the proximate cause of Plaintiff's damages.

117. Plaintiffs did not act in bad faith or were grossly negligent but relied on Defendants to act in accord with the PPM and the Operating Agreement.

23

118.   Plaintiffs were not contributorily negligent.

119.   WHEREFORE, Plaintiffs demand judgment against
Johnson in an amount to be determined at trial but believed to be
in excess of $3,000,000 plus AGFII's promised 12% interest and
New York's 9% statutory interest from January 2021 and the costs
of this action.

## PRAYER FOR RELIEF

120. WHEREFORE, Plaintiffs respectfully request that the
Court grant the following relief:

### I.

121. Permanently enjoining Defendants from committing and or
aiding and abetting the violations of the federal securities laws
alleged against them in this Complaint.

### II.

122. Ordering Defendants to disgorge their ill-gotten gains
received as a result of the Claims alleged in this Complaint in
an amount to be determined at trial but believed to be in excess
of $3,000,000 plus AGFII's promised 12% interest and New York's
9% statutory interest from January 2021 and the costs of this
action.

### III.

123. Granting such other and further relief as the Court may
deem just and proper.

Dated:   June 27, 2022
New York, New York

William Paul Nolan (8292)
The Nolan Law Firm
Attorneys for Plaintiff
444 East 75 Street- 15th floor
New York, New York 10021
Wpn@attorneysnewyork.com